UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARCY D GRAHAM,<br><br>Plaintiff,<br><br>v.<br><br>CITILINK,<br><br>Defendant. | CASE NO. 1:24-CV-370-HAB |

## OPINION AND ORDER

Plaintiff Marcy D. Graham ("Graham") was fired from her job as a bus driver for Defendant Fort Wayne Public Transportation, Inc. d/b/a Citilink ("Citilink"). Graham, a black woman in her fifties, believed Citilink's decision to terminate her amounted to race and age discrimination. So she sued Citilink, alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, as amended; and Fort Wayne City Ordinance G-21-78.[1]

Before the Court is Citilink's motion for summary judgment. (ECF No. 17). The motion is fully briefed (ECF Nos. 22–24) and ripe for consideration. Because the Court finds that Graham cannot establish a *prima facie* case of either age or race discrimination and that even if she did, Citilink fired her for non-pretextual, legitimate, and non-discriminatory reasons, the motion will be GRANTED.

---

[1] Graham's motion opposing summary judgment asserts that she pled a violation of the Family and Medical Leave Act of 1993 ("FMLA") in her complaint. (ECF No. 23, at 2). The events surrounding Graham's firing include disputes about FMLA leave. But her complaint does not even mention FMLA, let alone state a claim alleging Citilink violated it. (ECF No. 5). This summary judgment stage marks the first time FMLA has been mentioned, which "is too late in the day to be adding new claims." *Auston v. Schubnell,* 116 F.3d 251, 255 (7th Cir.1997). While "district courts retain discretion to interpret new factual allegations or claims presented in a plaintiff's briefs as a constructive motion to amend," it is "rarely appropriate to do so." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488–90 (7th Cir. 2023). This is not one of those rare cases. Thus, the Court will not consider Graham's FMLA claim.

## BACKGROUND

Citilink hired Graham as a bus driver in 2007. (ECF No. 15, ¶ 2). During the nearly sixteen years Graham worked there, Citilink disciplined her on forty-three separate occasions for forty-five total policy violations.[2] (*Id.* ¶ 3). This includes twelve suspensions. (*Id.*). Before she was fired, thirteen months had passed since her most recent disciplinary incident. (*Id.*). But Graham's attempt to turn over a new leaf was short lived.

Shortly after 7:00 a.m. on August 16, 2023, Graham was caught on camera using her cell phone and wearing ear buds while actively driving with passengers on the bus. (*Id.* ¶ 4; ECF No. 17-1, at 56–58). Moments later, she was captured watching a video on her phone while driving. (*Id.*). These constituted her first two violations of the morning, and the only two which Graham owned up to unequivocally. (ECF No. 22-2, ¶ 9).

Things escalated at 7:36 a.m. She informed dispatch that she needed to take FMLA leave and have a replacement take over for the day. (*Id.*). The parties dispute how Citilink handled this. Graham asserts that Citilink refused to take her information, resulting in an effective denial despite having prior approval. (*Id.*). Citilink says Graham's supervisor informed her that she just needed to check for approval. (ECF No. 15, ¶ 10). More notably, this argument led Graham to raise her voice in front of a passenger

---

[2] Graham says in her affidavit this disciplinary history is "incorrect," but only "because the alleged misconduct should have been removed from [her] record" pursuant to the policies in Citilink's employee handbook. (ECF No. 22-2, ¶¶ 5–6). This assertion, and its accompanying reference in the Plaintiff's Statement of Material Facts (ECF No. 22), cites nothing in the record to support its existence. (*Id.*). The Court also cannot independently verify this because neither party has provided the actual handbook. But even if Graham is correct, she cannot retcon her past violations out of existence for purposes of this case. Because of this, and because the statement does not deny the substance of her disciplinary history, the Court does not consider it to be in dispute. FED. R. CIV. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

Further, many statements in Graham's affidavit so directly contradict her deposition testimony that it bears the hallmarks of a "sham affidavit." *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) ("[T]he sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony."). To "weed out" Graham's "specious denials," the Court will identify each instance where it disregards statements from her affidavit which contradict her deposition, seemingly in an attempt to conjure up material factual disputes. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985).

boarding the bus, which Citilink deemed "[c]onduct unbecoming a Citilink employee."[3] (*Id.* ¶ 4). At that moment, she also may have misreported to dispatch that no passengers were at that stop.[4] (*Id.*). Later, Graham disobeyed an order from dispatch to return to a prior stop to pick up a passenger. (*Id.*). Citilink labeled this insubordination.[5] (*Id.*). Graham was also allegedly insubordinate when she refused to park a bus as instructed, although she denies this. (*Id.*). All events described in the last two paragraphs spanned less than thirty minutes. Not long after this, a replacement driver took over for Graham.

Graham's last alleged violation occurred a few hours later when a Citilink Human Resources Director contacted Graham to discuss her FMLA leave. When asked why she needed to take leave, she declined to answer because she thought the question violated HIPAA.[6] (ECF No. 17-2, at 23:1–23). Citilink called this refusal both insubordination and conduct unbecoming. (ECF No. 15, ¶ 4). Graham called back later to say there was a misunderstanding. (*Id.* ¶ 10). But by that point, the damage was done.

On August 18, 2023, Citilink fired Graham for the policy violations of two days prior.[7] (ECF No. 17-1, at 54–55). One year later, Graham filed this lawsuit in Allen Circuit Court, which Citilink promptly removed to this court. (ECF Nos. 1, 5). Citilink now moves for summary judgment on the ADEA and Title VII claims (ECF No. 17).

---

[3] Graham denies this is conduct unbecoming. (ECF No. 22-2, ¶ 10). But while she disputes the label, she admitted to the alleged conduct in her deposition. (ECF No. 17-2, at 15:7–16:6).

[4] Citilink also deemed this conduct unbecoming, which Graham denies. (ECF No. 22-2, ¶ 10). But despite claiming this did not occur, Graham stated in her deposition that it may have. (ECF No. 17-2, at 14:23–15:6). Regardless of whether this rises to the level of a factual dispute, the Court finds it to be immaterial given the number of other corroborated violations alleged.

[5] Although Graham disputes this violation through a general denial, (ECF No. 22-2, ¶ 8), Graham admitted in her deposition that she disobeyed the order. (ECF No. 17-2, at 16:7–17:13). She even explained why. *Id.*

[6] Sensing a pattern? Graham denies that she refused to answer questions about her FMLA leave. (ECF No. 22-2, ¶ 11). Even so, she admitted in her deposition that she was "not at liberty to discuss" what condition made her take FMLA leave. (ECF No. 17-2, at 23:1–23).

[7] In sum, despite Graham's disputes explained in this section and the accompanying footnotes, she has effectively conceded responsibility for at least five violations.

**DISCUSSION**

I. **Legal Standard**

Summary judgment is appropriate if a moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When reviewing a motion for summary judgment, evidence must be viewed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). Put another way, a court will only grant summary judgment "if, on the evidence presented, no reasonable juror could return a verdict in [the non-moving party's] favor." *Sorensen v. WD–40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). The Court does not supersede the jury's role in making credibility determinations and weighing the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This is especially true in employment discrimination cases, where "issues of intent and credibility are especially crucial." *Wright v. Ill. Dep't of Corrs.*, 204 F.3d 727, 730 (7th Cir. 2000).

II. **Analysis**

Citilink argues that Graham lacks factual support for both her age and race discrimination claims, so she cannot make a *prima facie* case for either claim. In response to Citilink's summary judgment motion, Graham abandoned the age discrimination claim. (ECF No. 23, at 1). The Motion for Summary Judgment is therefore GRANTED as to Graham's age discrimination claim.

A. **Title VII Claim**

That leaves Graham's race discrimination claim under Title VII as the only one ripe for this Court's review. Title VII prohibits employers from, among other things, "discharg[ing] any individual" or otherwise discriminating against them "with respect to [their] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-

4

2(a)(1). To survive summary judgment, "a plaintiff must present evidence [that] would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the adverse employment action." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 710 (7th Cir. 2017) (internal quotations omitted). Thus, the "sole question that matters" is whether a reasonable juror could conclude that Graham would have kept her job if she had a different race, and everything else remained the same. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016).

At summary judgment, there are two ways the Court may analyze Graham's case. First, the Court may use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Second, as the Seventh Circuit explained in *Ortiz*, the Court may also simply ask "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Because the parties use both frameworks, the Court will do the same.

Under *McDonnell Douglas*, Graham must first set forth a *prima facie* case of racial discrimination. 411 U.S. at 802. To do this, Graham must show that (1) she is a member of a protected class; (2) she performed her job to her employer's expectations; (3) she suffered an adverse employment action; and (4) one or more similarly situated individuals outside her protected class received better treatment. *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018). Next, if Graham can make this *prima facie* showing, then the burden shifts to Citilink to "present a legitimate, non-discriminatory reason" for her firing. *Id.* Finally, if Citilink carries that burden, the onus is put back on Graham to show that Citilink's stated reason is pretextual. *Id.*

5

Citilink contends that Graham cannot make a *prima facie* case of race discrimination because she cannot satisfy the second and fourth prongs. (ECF No. 16, at 12). In Citilink's view, Graham was not meeting the company's expectations, and she has not pointed to any similarly situated employee who is a fair comparator. *Id.* The Court agrees.

Graham's job performance did not meet Citilink's expectations. She undisputedly committed multiple policy violations on her final day of work. (ECF Nos. 22-2, ¶ 9; 24, at 4–5). While Graham denies that she committed *all eight* of the alleged violations, she admitted to the underlying conduct of most of them in her deposition.[8] (ECF No. 17-2). Graham also does not deny that Citilink disciplined her more than forty times in the preceding fifteen years, suspending her twelve times.[9] Although more than a year had passed between the most recent incident and her final day of work, (ECF No. 15, ¶ 3), that does not render her disciplinary history irrelevant to assessing her job performance. Nor does it reduce the potency of the volume of violations she committed at once.

Further, Graham cannot identify comparably similar individuals outside her protected class that were treated more favorably. These comparators must be comparable in "*all material respects*" including performance, qualifications, and conduct. *Swidnicki v. Brunswick Corp.,* 23 F. Supp. 3d 921, 931 (N.D. Ill. 2014) (emphasis added). And in comparing employees alleged to have engaged in similar misconduct, "the critical question is whether they have engaged in conduct of comparable seriousness." *Coleman v. Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012). Graham's Statement of Material Facts lists eight employees who she claims committed similar offenses.

---

[8] As the Court has already explained, most of Graham's purported factual disputes are about Citilink calling her actions violations, not whether she engaged in the conduct alleged. *See* footnotes 2–7.

[9] *See* footnote 2 (explaining why Graham's attempt to dispute her disciplinary history does not negate the fact that the violations within it occurred).

(ECF No. 22, ¶ 11). The list poses a host of problems. Four of them are black, so they cannot be comparators to establish a *prima facie* case. *Id.* As for the other four, Graham adds no details of their conduct, only that they "committed same or similar offenses as Plaintiff on August 16, 2023." *Id.* Even if they did engage in similar violations at some point, Citilink attests that no other employees have committed as many violations in one day as she did. (ECF No. 17-1, ¶ 6). Graham has neither disputed nor rebutted that contention. Nor has she offered evidence to suggest her comparators have a similar *overall* history of job discipline throughout their employment with Citilink.

Even if this could be considered a *prima facie* case, Graham's claim still fails in the later stages of the *McDonnell Douglas* test. Citilink asserts it fired Graham because of her numerous violations and infractions on August 16. This explanation for her termination is a legitimate, non-discriminatory reason for firing her, so the burden next shifts back to Graham "to show pretext, or at least to produce evidence establishing a genuine factual dispute about pretext to defeat summary judgment." *Barbera*, 906 F.3d at 629.

With respect to pretext, Graham presents no evidence that the reason provided by Citilink is a cover-up for an illegal race-based motive. Beyond her flawed comparators, the only evidence in the record to this end is Graham's broad suggestion that her co-workers disliked her and she did not know why. (ECF No. 17-2, at 9:11–10:25). To the extent she wagered guesses in her deposition, none of them had anything to do with her race. *Id.* Simple personal gripes and conclusory assertions of racial discrimination cannot alone lead to a finding of pretext. *See Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014) ("Speculation is no substitute for evidence at the summary judgment stage.").

What Graham does offer as an explanation is that she was denied FMLA rights that she had previously been approved for. But even if true, this has nothing to do with racial

discrimination. And even if her rights were denied improperly while her purported comparators received them, that does not amount to proof of race discrimination. The proper province of this beef is in an FMLA claim, not a Title VII claim.[10] In sum, under *McDonnell Douglas*, Graham cannot prevail.

She fares no better under the "more straightforward evaluation of the evidence" called for in *Ortiz*. *Reives v. Illinois State Police*, 29 F.4th 887, 893 (7th Cir. 2022). The ultimate question is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge." *Ortiz*, 834 F.3d at 765. As the Court has already explained, no evidence in the record supports an inference of racial discrimination, no comparator employees she identifies are similarly situated, and Citilink asserted a non-discriminatory reason for firing her. Even if Citilink was wrong about labeling some of her actions policy violations, this Court is not a "super-personnel department that second-guesses" employment decisions. *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). If Citilink's stated reason "was not a guise for a discriminatory purpose," the Court "must respect that decision." *Id.* Because no evidence of a discriminatory purpose exists here, a reasonable jury therefore could not conclude that Graham's firing was discriminatory. Thus, her Title VII claim fails as a matter of law.

### B. Fort Wayne City Ordinance G-21-78

With Graham's ADEA and Title VII claims resolved, the only claim left from the original complaint is Graham's allegation that Citilink violated Fort Wayne City Ordinance G-21-78. Neither party mentioned this claim in the summary judgment briefs. (ECF Nos. 16, 23, 24).

---

[10] The Court has already explained that no FMLA claim is before it. *See* footnote 1. Nothing the Court says on the merits today precludes Graham from pursuing a separate FMLA retaliation claim, although the statute of limitations might. 29 C.F.R. § 825.400(2)(b) ("If the employee files a private lawsuit, it must be filed within two years after the last action which the employee contends was in violation of the Act, or three years if the violation was willful.").

Because this is a state law (or municipal law) claim that arose from the "same case or controversy" as Graham's federal ADEA and Title VII claims, the Court was originally able to exercise supplemental jurisdiction over it. *See* 28 U.S.C. § 1367. But now that the Court has disposed of all claims it had original jurisdiction over, the Court must address whether to retain jurisdiction over the lone remaining claim under state law.

The Seventh Circuit has consistently stated "that the usual practice" within the circuit "is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendent state claims"). But there are "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994). This is because there are occasionally "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id*. at 1251.

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* That concern is not present here because this case was originally timely filed in a state court and can simply be remanded. Even if that was not the case, Indiana law gives a plaintiff three years after a dismissal of state law claims in federal court on jurisdictional grounds to refile those claims in state court. *See* Ind. Code § 34-11-8-1.

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). Here, although the Court has devoted significant resources to the disposition of the federal claims on summary judgment, it has not delved deeply into the state law claims. *See Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"). In fact, none of the summary judgment briefs even mentioned the state law claim. Thus, while there are instances in which "a district court should exercise supplemental jurisdiction over pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance where disposition of pendent state law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. And if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. But "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. The Court believes that Plaintiff's claims are likely without merit, but it cannot say with certainty that they are frivolous. Although Plaintiff's state court claim overlaps significantly with the claims this Court just disposed of, the text of the city ordinance sweeps much more broadly than Title VII does. Thus, the Court believes this claim involves a distinct analysis that a state court would be best equipped to conduct. Although the Court may very well be delaying the inevitable, it concludes that relinquishment of jurisdiction is appropriate.

In sum, the Court concludes that none of the exceptions to the "usual practice" applies in this case. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims and remands the state claim to the Allen Circuit Court.

## **CONCLUSION**

Citilink's Motion for Summary Judgment (ECF No. 17) is GRANTED. Graham's claim alleging a violation of Fort Wayne Ordinance G-21-78 is REMANDED to the Allen Circuit Court.

**SO ORDERED** on November 12, 2025.

    s/ *Holly A. Brady*
    CHIEF JUDGE HOLLY A. BRADY
    UNITED STATES DISTRICT COURT